I hear first from Mr. Gale. Yes, Your Honor. I have the privilege, I believe, today of standing before you for what I believe has been told to me that it's my 27th time to discuss matters with you. But more importantly, that it's on behalf of Ms. Bond, both as an individual on the representative of her daughter's estate and also as an ex-friend for her granddaughter in regards to this case against Nueces County and the time that her daughter spent in the Nueces County Jail for a one-day period. I'm not going to go too much into the procedural history except to say that an issue is a question about whether the district court erred in regards to not allowing an amendment to a pleading and or to determine that it was futile in nature. I would argue, as I will during this, that any of the complaints that were filed, including the third amended complaint, none of which were futile under the appropriate standards that I believe this court has enacted and specifically dictated to Nueces County through the BIA case. In regards to the factual history, I'll be fairly brief, but it is without question that Tammy Bond went into the Nueces County Jail after having ingested a huge amount of illegal narcotics and that was eventually the at least the manner of her death and that during the time period that she was in the Nueces County Jail there were several opportunities that were obvious and known to the jailers, to the medical staff, to the inmates that were with Ms. Bond and particularly they were told to people in regards to her having problems and needing some medical attention. Now with that said, the purpose of this appeal is in regards to the pleadings as it concerns the Monell liability of Nueces County. So even according to the district court, I think that the facts that underlie the death are probably not, well they're not at issue. Those facts are basically accepted as true and the question then and the one that was decided by the district court is whether or not there is, is it plausible that there is some sort of policy or lack thereof, some sort of pattern within Nueces County that led to Tammy Bond's death and the answer to that is yes, it is not improbable, it is not implausible, it is completely plausible and the pleadings that were provided in regards to this case ultimately show that. In regards to the, you know, the standard of the review in regards to the amendment of the pleadings, we must first look to what the district court did. The district court invited the pleading but then made a determined, not that it was dilatory or anything of that nature because you need to keep in mind that we never got to any kind of a discovery phase in this case whatsoever. So the court did not find that it was dilatory or it waited too long. What they found was that it was futile in nature, is that if everything in there was true, it didn't matter because it didn't meet any pleading standard. Now, we may have some questions regarding exactly what that pleading standard is. In the Bayeh case, I thought this court made it pretty clear to Nueces County specifically into a case eerily similar, if not almost exactly on point in regards to this particular case, as to what would be necessary to have a plausible liability claim on its face. In regards to the motion for seeking leave to file the third amended complaint, I actually briefed that particular case and brought it to the district court's attention, at least in an attempt to remind the court of what this court had done just two years before. And the district court unfortunately did not take heed in that opinion and did not take stock in it and did not include it in regards to anything other than to some sort of cursory explanation of why it did not apply. I have yet to see really any true distinction in regards to that case and why it wouldn't apply, except that the Bayeh case occurred over a myriad of days. And when in this case, it was a shorter period of time. I think that's probably not as important as a distinguishing factor, especially as I put in the brief, when you're talking about simply the medical indifference that's at issue. The defense has provided a couple of cases to this court in the last 24 hours, one of which is Comcast versus the National Association of African American-Owned Media. That's a case in which Byron Allen, entertainer, had some concerns with his channeling. He filed a lawsuit under Section 1981. In the Comcast case, the Supreme Court did not make it clear that there was some sort of heightened pleading standard in regards to any of these cases. In fact, it had something to do with 1981 and proving but for the race that that would have not occurred. So the Comcast case really doesn't define anything. And defendants point out that it's something that confirms a Monell liability finding. But if you do a search of Comcast, not once does the term Monell even arise. The other case that they also provided was the Pena case. In that case, it was a taser case. And the only allegation of a policy at all was one that involved that they had a policy of shooting moving targets, which the court accurately pointed out, in and of itself, is not unconstitutional. There are many factors that may come into play in regards to whether that would or would not be sufficient. But that was the only policy that was alleged in Pena. And it was also based on a single isolated incident. And that was it. So the two cases that the defense are trying to utilize to show this court that the standards were followed by the district court really don't have much of an application. And the Baye case, which is clearly applicable, gives a roadmap to, at least to Nueces County, who is the particular entity involved in both this case and that case, as to what is sufficient to allege a flamboyant plausibility standard Monell liability case. To the extent that I've heard defendants argue in the brief or otherwise or insinuate that there was there's no specific identity of the policymakers involved in this case. I mean, in this case, this court has, on several occasions, including Roden versus City of Dallas, that's at 826 F3rd 280, has repeatedly said that the specific identity of the policymaker is not a legal question that needs to be put. I mean, it is a legal question, and it doesn't need to be put. So when we're looking at this, and I have to step back for just a second, and I may be talking so fast, I'm not giving you an opportunity to ask me a question, but I'm a little concerned with the defense's sort of interlineation between the Twombly plausibility standard and one that out, not out of the Fifth Circuit, but underneath the Fifth Circuit's umbrella, that twist and sort of confuse these two things. I'm looking, when you look at the history about the heightened pleading standard, let's just call it, I mean, I know we all agree that that doesn't exist. And the Supreme Court has made it abundantly clear that it does not. And we have a rule eight confuse the two and believe that a plausibility standard is something that requires the heightened pleading for Monell liability claims, and it simply doesn't. The Supreme Court of the United States has on several occasions, it voluntarily came out in 2007 and 2009, respectively. And then in 2007, there was the Erickson versus Pardis case that talked about a plaintiff's 1983 case involving only the rule eight notice. So let me ask you a question, though. What was the status of the discovery in this case? I mean, there was no discovery in this case. There has never been any discovery conducted in regards to this case. There may have been some preliminary disclosures provided in regards to reports. And I think that's where the district court magistrate before whom you've been before. The prohibit discovery. Well, the pleadings were being argued about. Yes, we didn't have any discovery that was I know you did. You say you didn't have any discovery. Why was that? I don't understand. Normally, you get a you file a petition and you have a response and then and then you have a pretrial conference, perhaps at some point in time, you set a discovery plan, whatever. But you're saying that this whole thing went off at the outset and you never had an opportunity to develop any facts regard to Monell liability. Yes, that's true. And we had I mean, while it may be part not not part of the record on appeal, there were several hearings in which we had held in which we were going to determine these issues before any discovery was going to be conducted whatsoever. So we were not allowed to do discovery. And with the 12 B6 pending, I mean, it's typically going to be such that the defendant's going to require that that be decided at the earlier issue. And so there was no discovery conducted in regards to it. There certainly wasn't anything regarding Monell liability, although I must concede we did have some initial disclosures that were probably provided, but those only provided information in regards to the specifics of the personnel that were involved in the case, and hence, the second amended complaint that included those names. Now, when we're looking at the standard, again, you know, we've had several cases that have come out from the Supreme Court, we've had Skinner versus Switzer in 2011. That was a case involving DNA evidence in a criminal case that resulted in a 1983 cause of action. The Supreme Court had overruled the Fifth Circuit's determination on that. And in doing so, it's widened to the Swear Switch case, you know, in lieu of Iqbal and Twombly as being when describing the federal pleading standard. We also had Johnson versus the City of Shelby in 2014. Again, that was a officer due process case when they brought to light some criminal activities of some of the councilmen. Again, that court reaffirmed Leatherman and Swear Switch and confirmed in no uncertain terms that there is no heightened pleading. In this particular case, you know, I can't imagine that I could do any better a job with the limited information that I had in pleading what I believe is an implausible case for failure to provide policies, to have having a policy of lackadaisical medical treatment, a complete failure to train in regards to, you know, you just name it. There is a myriad of ways, and I'm not going to list them out, but they're contained in the complaint that's at issue. And I'm certain this court's going to read that. But I mean, there's a myriad of ways in which Nueces County failed to provide medical treatment to Ms. Twombly. And had they done that, had they had policies, then that would have been avoided. But the question at the end of the day is, is it plausible? You know, when we're talking about Iqbal and Twombly, I mean, even in the Twombly case, it talks about, you know, nudging it over the line from implausible. You know, the cases that we look at for an implausibility case, I get it. I don't think that they should have cases that say, well, they treated her differently because when she came in, she had a tank top on. And that's the reason. And well, of course, you're going to dismiss that. So it's an implausible claim. And if you have things that are overreaching in regards to that factually, that's fine. But implausibility is not a case such as this, when someone dies from a drug overdose in which there's multiple opportunities to help that person. And it is not implausible to understand how that couldn't be attributed to the training or the policies or a pattern of practice of providing seriously deficient medical treatment in the Nueces County Jail. It's just not. And so if there's not any other questions, I mean, I think I've gone through everything. I just, looking at the Baye case, again, I think it was a good roadmap that was ignored by the district court for whatever reason. And if this court wants, looks at the facts of both of these cases, it's almost, I mean, eerily a identical case. And therefore, we're asking that you send it back to the district court so that my client, on behalf of her deceased daughter and on behalf of her granddaughter, will have an opportunity to do discovery in regards to these issues. As I've stated before several times, I believe, is that it seems illogical that you have to have the facts that support your claim on summary judgment before you're able to do the discovery to find those very facts out. It is an illogical idea that we should be possessed with the knowledge that's necessary to know everything about an entity and everything about their policies. We can't. That is just not going to happen. In other words, the only people that can sue the county are people that sued the county a thousand times. And so with that said, we're looking for opportunity. That's what we want to do. And who knows? On summary judgment, maybe we fail, but maybe we don't. But right now, we have constitutionally sufficient pleas. I appreciate it. Thank you, Mr. Gale. You saved time for rebuttal. Mr. Miller. May it please the court. I'm Brian Miller for Nueces County. I want to start off with that illogical idea that Mr. Gale was referring to. The idea that you're expected to do more than provide a threadbare recital of the elements of a cause of action when you plead a case, and that you should have discovery. The Supreme Court already rejected those arguments in the Iqbal case. The Supreme Court said that Rule 8 doesn't open the doors to a discovery for somebody armed with nothing more than conclusions. You may not have discovery as to what the relevant facts are when you file that complaint, but you're expected to state a factual theory in your complaint that nudges your case across the line from merely possible to plausible. So that dispute has already been addressed. Moreover, one of the many things that isn't in the plaintiff's brief is an argument about some sort of error arising from being denied discovery. If the plaintiff had a complaint about not having discovery, that should have been brought to the trial court's attention, and it should have been briefed in the plaintiff's brief in this appeal. Regarding the pleading standard and this tension, possible conflict that the plaintiff alleges between the Twombly and Iqbal cases and the Leatherman case, the answer is that there is no conflict. Leatherman simply requires that a court analyze municipal liability claims under the same pleading standard applicable to civil claims generally. Indeed, this court, in the Ratliff v. Aransas County case earlier this year, rejected the same argument on essentially identical briefing by the same plaintiff's counsel. This court held that Twombly and Iqbal provide the standard that applies to municipal liability claims, and Leatherman does not affect that standard. The Supreme Court's decision earlier this year in Comcast cements this. Comcast confirms that the Twombly standard applies to the essential elements of a claim. Comcast found no basis for a lower standard for pleading Section 1981 cases, and admittedly, Section 1983 is not mentioned in Comcast, but a similar rationale applies here. There is no basis for a lower standard for Section 1983 cases, whether they involve municipal liability claims or otherwise. In fact, Iqbal was a civil rights case alleging that government policies cause a deprivation of the plaintiff's constitutional rights, and that is similar to what we have here, although the policies in Iqbal were alleged in the context of supervisory liability, and we have the very similar context of municipal liability. With the pleading standard discussed, the next question is, what are the relevant allegations that we apply that pleading standard to? Now, there's been talk about a third amended complaint. The district court did not grant leave to file that third amended complaint, and the plaintiff's brief in this appeal does not present any argument about how or why the district court erred in denying leave. There is a boilerplate statement of the standard review on pages eight and nine of the plaintiff's brief regarding review of leave to amend, but there's no argument that follows that applies that standard review to the circumstances of and allegations contained in the third amended complaint. As a result, any reliance on the third amended complaint in this appeal was waived due to inadequate briefing, but there's other things that were waived too. In the second amended complaint, there were 10 policies asserted. There's only two policies mentioned in the plaintiff's brief on Three policies mentioned in the brief on appeal are a municipal policy of consistent non-compliance with required state medical standards, but neither the brief nor the complaint tells us what those standards are, and then an allegation that individual county employees were inadequately trained and lacked the policies and direction necessary for their jobs. Basically, a failure to train and failure to supervise claim, although specific defects in the training and supervision are not identified in either the complaint or in the appellate brief. Now, the plaintiff in the third amended complaint referred to 23 other incidents over a course of close to two decades, but those events are not alluded to in the brief on appeal. In the appeal, the plaintiff relies only on the events surrounding Tammy Bond and her incarceration to show a policy. Any reliance on the other events was abandoned due to inadequate briefing. Now, looking at the events regarding Tammy Bond, we have to be aware of the Supreme Court's Monel, especially, that there is no vicarious or respondeat superior liability under section 1983. The conic opinion emphasizes that you need official municipal policy, which could include the decisions of a government's lawmakers, the acts of policymaking officials, or practices so persistent and widespread as to practically have the force of law. But in the complaints in this case, we don't have any allegations regarding the county's lawmakers, and we don't have any allegations regarding the acts of a policymaking official. That leaves us with a third option, which is practices so persistent and widespread as to practically have the force of law. In 2002, in Pineda v. City of Houston, this court explained that one act itself is not a custom. There must be a persistent and widespread practice. More recent opinions, like the Pena v. Rio Grande City opinion and the Ratliff v. Rancis County opinion from earlier this year, explained that to plausibly plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury. Yet that's all we have here, and that's not enough. We have the same problem that you had in Pena and Ratliff. No specific facts about any other event to establish a policy as opposed to isolated errors. We also have to keep in mind that a policy alone does not make a case of municipal liability. As cases like Pena and Peterson v. City of Fort Worth, a 2009 decision of the court, say you have to have an official policy promulgated by the municipal policymaker that was the moving force behind the violation of the constitutional right. Peterson further explains that a customer policy is official only when it results from the decision or acquiescence of the municipal policymaker. In the complaints here, you don't have anything alleged to attribute the policy to a policymaker, whether that policymaker be the sheriff or the county's commissioners. A policy can a policymaker cannot adopt or acquiesce in a policy or a practice if the policymaker doesn't know about that practice. The court recognized that problem in with the alleged policy of condoning excessive force in that case. The court explained that the complaint invites no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom. We've got that same problem here with the allegations in the complaint. The Peterson case explained that if you don't adhere to this attribution principle, the effect ultimately is to impose the kind of respondeat superior liability that Supreme Court has cautioned against in Monell, Connick, and other cases. You basically are imposing liability on municipality for employees acts without considering the knowledge and conduct of that policymaker in between whose conduct is supposed to make the county responsible for that conduct. The third element of municipal liability is causation. This court explained in Ratliff that conclusory allegations do not suffice for causation. Instead, you need specific allegations supporting a plausible causation inference. But what do we have in the complaints here? What standards were violated? The complaints don't tell us. How they were violated is also a problem. What would have been different regarding staffing, training, or care if there had been compliance? And how would this provide a basis for concluding that Tammy Bond would have had a different outcome if changes were made, whatever those changes would be, to put the jail into compliance? The complaints in this case don't answer that question. That brings us to the BIA decision. The plaintiff asserts that, well, BIA involved allegations of improper care over a six to seven day period. And I can rely on that case even though this case involves only what happened one night. To correctly apply BIA, one has to understand the scope of that decision and the limits on the ability to use that decision based on what the decision actually decided. BIA cannot be read to dispose of the need to plead facts showing the policymaker's adoption of or acquiescence in a practice, nor can it be read to dispose of the causation requirement. As I mentioned before, Comcast requires pleading facts sufficient to support every essential element of the claim. And under Monell and Connick and other Supreme Court decisions, the policymaker's consent or acquiescence in the practice and causation are essential elements of a municipal liability claim. So these opinions require pleading facts to address all these elements. BIA did not address two of the policymaker, nor did BIA address causation. BIA instead was focused on the sufficiency of the description of the policy. That is the description of the allegedly widespread and persistent conduct that became what was expected of the county's employees. And even then, it's doubtful whether BIA got there. Consider by contrast a case cited in CLYCE, CLYCE versus Hunt County, where you had a juvenile detainee who was suffering from an undiagnosed bacterial infection over a course of days. The court concluded there that a policy of inadequate care cannot ordinarily be inferred from a single constitutional violation, and that the facts in that case, CLYCE, CLYCE, were insufficient to cross the threshold. Regardless, the district court properly distinguished BIA in its opinions on the motion to dismiss and the denial of leave to amend. The district court recognized that experiences over six or seven days are more likely to indicate a systemic problem than one night's events. Over a longer time period, different staff members with different supervisors are more likely to come into contact with a prisoner, and similar reactions by those different individuals may be a better indicator of a systemic problem. Indeed, in BIA, there was consistent and more obvious problems over that longer period than what you have in our case. The plaintiff presented to the jail with excruciating back pain on the day of booking and arrest. Three days later, the plaintiff in BIA had soiled himself. The next day, the BIA plaintiff had lost ability to control bodily functions and was having muscle spasms, and by the sixth day, the plaintiff in BIA was paralyzed. In our case, by contrast, Tammy Bond presented to the jail without any problems. There's no allegation that anyone at the jail knew of the underlying problem of her having ingested two baggies of methamphetamine or amphetamines. While at times Tammy Bond was uncooperative, was lying on the floor, needed help to get about the cell and get to the bathroom, the complaint also alleges that later that evening she was pacing her cell. So even if she had been non-ambulatory at one point, the complaint alleges that later she was ambulatory. Tammy Bond died in the early morning hours of March 7th. The complaint does not provide us any timeline regarding whether this set of events occurred over the course of three or four hours as if it were a nighttime arrest on March 6th or a longer time period. Given that there's no basis to conclude that this was more than a few hours from what's alleged in the complaint, how do you infer a persistent and widespread practice based on the events of one evening involving at most a handful of jail staffers, let alone a persistent and widespread practice that's attributable to the policymaker through knowledge and acquiescence? Also, how do you infer a causal link to that policy based on the scant content in the complaint? So again, just to summarize, the district court applied the right standard by applying Tuamba-Niqbal. The Third Amendment complaint is not properly before the court. It's only the Second Amendment complaint because there's no argument about the denial of the failure to leave. And the Baye case is distinguishable, and the cases that require proof of a persistent and widespread practice are the ones that govern this appeal. Thank you, Mr. Miller. Mr. Gale, you've saved time for a vote. Yes, thank you. Just real quick, I guess, you know, I would probably answer Mr. Miller's question that if we had to, in a pleading concerning Monell liability, answer any and every possible question that could come up with what I consider a summary judgment motion, then the answer is you will always fail. There is not going to be a complaint that's ever going to be filed in regards to a civil rights case, unless that entity has been sued by that particular attorney many times in the past, that is going to be able to answer all the questions that Mr. Miller proposes. I would agree with that concept, but that's the purpose of discovery. That's the reason that we allow for the discovery. And their manipulation of the Baye case, you know, it says that Baye is important because it was a seven-day period. That is not the importance of the Baye case. All the Baye case says then is, well, what if he had died within two days? Then Baye would have not had a claim because he would not have manifested his injuries over a larger and more significant period of time. No, the timing of the issue, while it may be great fodder for argument before a judge or a jury and a fact finder of some kind in regards to the indifference that would be at issue, it has little to do with the actual plausibility of a complaint concerning the same. You know, so in regards to this case, and I admit it, there is a shorter period of time, but there are still the same knowledge and factors. While I don't think necessarily the underlying constitutional claim is at issue because the underlying court said that there was enough there for liability in regards to a constitutional aspect of that nature, if we invite ourselves to do that, and I think Mr. Miller has done that, and he says the complaint doesn't have any information regarding the personnel at the Sheriff's Department having any knowledge that there was any concerns, that's not true. There is a multitude of examples in there in regards to the knowledge that they did have, moving her from cell to cell, moving her to isolation cells, doing searches for drugs because they thought that she was acting disoriented and was having troubles. You know, there's a multitude of examples in regards to that. So what they say in regards to that is false, but even if it works here, I think it's irrelevant because at this point we're talking about the pleading issues in regards to the county alone. The question is not, how can a court infer everything from a complaint in regards to all knowledge regarding a policy maker in regards to what they did or did not know, in regards to what they did or did not do. The question is, has a plaintiff stated a plausible case? Have they stated something that, using common sense and our own knowledge, that is plausible? And in regards to Ms. Bond's case, is it plausible that a death of this nature, which is obviously and could have been preventable, is it plausible that there is a concern with Nueces County, given its history, giving all of the examples that were provided in the complaint as well, as some sort of backdrop in regards to this, that they do have a pattern, at the very least, of providing, you know, being seriously indifferent to serious medical needs of those that are entrusted to its care? And the answer to that is, is that right? I haven't looked at the exact list. There is a multitude of them, but there are some that deal with overdoses, some are suicides, some are other medical conditions that resulted in death. You know, I mean, we didn't go through discoveries. I don't know exactly the number of persons that have overdosed in the jail, but I included what I could glean as far as examples of medical concerns. And I think there was also a listing about four or five deaths that are at least known, and some of which were overdoses. In particular, I can think of the Kinney versus Nueces County case, but that was a little time back. But, you know, I don't think it's without question, much like in far more other cases, that there is going to be persons that come into the jail that are under the influence of narcotics. That's not a question. So the question is, you do need to have training in regards to that. So in regards to the training issue, there would be an issue about whether or not they're training for people that knowing full well that they come into there, that they need to be checked or rechecked, or if the circumstances dictate that they'd be provided immediate medical attention. There is a plausible idea that this death was directly attributable to Nueces County, better to do that. And so we'd ask that you reverse the district court and to send us back to them for the purpose of conducting some discovery. Thank you. Thank you, Mr. Gale. Your case is under submission, and the court is in recess until one o'clock tomorrow. Thank you. Thank you.